STATES DISTRICT COURT WESTERN
DISTRICT OF NEW YORK
_____

CHERYL L. E.,

                       Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

**DECISION AND ORDER**

1:22-cv-00308 (JJM)

This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [8, 10]. [1] The parties have consented to my jurisdiction [12]. Having reviewed the parties' submissions [8, 10, 11], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 2,011-page administrative record [6, 7] is presumed. The plaintiff filed applications for DIB and SSI on August 19, 2020. Id. at 17. She alleged a disability beginning on April 10, 2020. Id. Plaintiff's claim was initially denied. Id. Administrative Law Judge ("ALJ") Deborah J. Van Vleck conducted a telephonic hearing on August 20, 2021. Id.; *see also* id. at 38-75 (transcript of hearing). Plaintiff and her attorney

_____

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

appeared.  Id. at 40.  ALJ Van Vleck heard testimony from the plaintiff and vocational expert

Steven Sachs.  Id. at 46-74.


A.      **The ALJ's Notice of Decision**

ALJ Van Vleck concluded that plaintiff was not disabled from April 10, 2020

through September 3, 2021, the date of her decision.  Id. at 27-28.  She determined that

plaintiff's severe impairments were "degenerative disc disease of the lumbar spine and bilateral

hips; the residual effects of coil embolization for aneurysm in 2007 and 2010; coronary artery

disease, status pot-surgical treatment, with mild left ventricular hypertrophy; the residual effects

of ventral hernia repair and recurrence; diabetes mellitus, type II; and chronic obstructive

pulmonary disease (COPD)".  Id. at 20.

ALJ Van Vleck determined that plaintiff retained the residual functional capacity

("RFC") to perform sedentary work with several additional limitations:

> "[T]he claimant is limited to occasional climbing of ramps and
> stairs; never climbing of ladders, ropes, or scaffolds;  occasional
> balancing, stooping, kneeling, crouching, and crawling; never
> working at unprotected heights or moving mechanical parts; never
> operating a motor vehicle; and never working in concentrated
> exposure to humidity, wetness, dust, odors, fumes, and pulmonary
> irritants."

Id. at 21.  She found that plaintiff was capable of performing her past relevant work as a

collections agent and telemarketer.  Id. at 27.

B.      **Plaintiff's Testimony**

Plaintiff testified that she stopped working at her job doing magazine sales and

telemarketing on April 10, 2020 due to the pandemic.  Id. at 47, 57, 71.  Although she spends

most of her time on the first floor of her house, she is able to "manage" the stairs to the second

floor.  She finds it "a little bit hard" to do some cleaning and housework tasks such as vacuuming, bending down, and doing the dishes.  Id. at 56.  She claimed, at the time of her testimony, to be able to sit for "15 minutes at the most" before needing to "stand up and walk around for a few minutes to loosen up".  Id. at 64.  She testified she was capable of standing "[m]aybe ten minutes at the most" and of walking "about a block and a half to two blocks" before stopping.  Id.  She had a hip replacement surgery scheduled for September of 2021.  Id. at 49.

**C.      Functional Assessments in the Record**

John Schwab, D.O. examined plaintiff on November 16, 2020.  Id. at 1771-77 (Dr. Schwab's report).  Plaintiff told Dr. Schwab that she cooked, cleaned, did laundry, and shopped daily, as needed.  Id. at 1772.  She liked to go to stores and to her doctors' appointments.  Id.  In her free time she watched television, listened to the radio, and read.  Id. Dr. Schwab observed that plaintiff was in "no acute distress", her gait was normal, she needed no help getting on or off the examination table, and was able to rise from a chair without difficulty. Id. at 1773.  She was able to do 70% of a full squat and walked on heels and toes "without difficulty".  Id.  She exhibited full range of motion of the hips bilaterally.  Id. at 1774.  A right hip x-ray showed osteoarthropathy and a cam deformity.  Id. at 1774, 1777.  In his medical source statement, Dr. Schwab concluded that plaintiff had "[m]arked restrictions to bending, lifting and carrying heavy objects" and for "prolonged walking, climbing stairs and ladders, and prolonged exertion".  Id. at 1775.

State agency physicians D. Miller, D.O.[2] and Gary Ehlert, M.D. reviewed the evidence in the record and issued reports on December 7, 2020 and March 29, 2021,

---

[2]      Dr. Miller's first name does not appear in the record.

respectively.  Id. at 99-103, 114-18, 133-38, 151-56.  Both doctors found that plaintiff could sit

for six hours, and could stand or walk for a total of two hours, during the course of an eight-hour

work day. Id. at 100, 114-15, 134, 152.

Plaintiff's treating nurse practitioner, Kimberley Wilson, completed medical

examination forms on April 6, 2017 (id. 653-54) and June 26, 2018 (id. at 801-02), and a

Medical Source Statement on August 2, 2021 (id. at 1981-85).  In the April 6, 2017 form, NP

Wilson did not indicate that plaintiff had any issue with her hip, and identified only medical

conditions of chronic back pain, heart disease, and diabetes.  Id. at 653. She stated plaintiff had

no limitations sitting and moderate limitations walking and standing.  Id. at 654.  In her June 26,

2018 form, NP Wilson identified "[b]ilateral [h]ip pain" as a medical condition.  Id. at 801.  She

indicated plaintiff had no limitations walking, standing, or sitting.  Id. at 802.  NP Wilson left the

majority of the August 2, 2021 form blank, but did identify "chronic left hip pain" as a diagnosis,

and stated that "patient's health isn't stable enough to work.  Her pain has to be addressed both

back and abdomen."  Id. at 1982.  She also stated that plaintiff could walk 1/2 to 1 block without

rest or severe pain.  Id.  She did not opine as to any other functional limitations, and stated that

"this patient requires a physical assessment with PT in order to accurately answer the majority of

this form".  Id. at 1985.


**D.      ALJ Van Vleck's RFC Analysis**

To arrive at her conclusions of plaintiff's RFC, ALJ Van Vleck analyzed the

evidence in the record, including plaintiff's testimony, plaintiff's other submissions to the SSA,

and the medical and opinion evidence.  Id. at 22-27.  After summarizing plaintiff's testimony,

she found that plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 22. ALJ Van Vleck then contrasted plaintiff's complaints of low back and hip pain with medical records documenting a normal gait, good mobility of her extremities, and denial of other symptoms, such as muscle weakness. Id. at 23. She noted that Dr. Schwab reported that plaintiff was in no acute distress, walked on her heels and toes without difficulty, squatted up to 70 percent, got on and off the examination table without help, rose without difficulty from a chair, and had a normal gait. Although her lumbar range of motion was reduced and she had a positive straight leg test while supine, it was negative while sitting and she had full range of motion and full strength in her lower extremities. Id. ALJ Van Vleck found these findings critical during her analysis of the persuasiveness of Dr. Schwab's opinion:

> "However, other findings in Dr. Schwab's examination support less than marked restrictions, as the claimant had normal gait, no use of an assistive device to ambulate, full range of motion of the upper and lower extremities, no sensory deficit, full strength in the upper and lower extremities, and full grip strength bilaterally."

Id. at 26. The ALJ ultimately found that Dr. Schwab's examination of plaintiff indicated that she was "not as limited as Dr. Schwab opined", but that "restrictions are supported by physical examination findings and medical imaging and still consistent with a less than sedentary residual functional capacity opined by State agency medical consultants". Id. at 25-26.

ALJ Van Vleck found that the State agency medical consultants' opinions were "persuasive because they are supported by analysis and reference to records and consistent with the medical evidence of record as a whole documenting substantially normal physical examination findings". Id. at 25. She found Dr. Ehlert's opinion to be the most persuasive,

"since it limits the claimant to no climbing of ladders, ropes, or scaffolds which is consistent with her back and hip problems". Id. at 25. She found the limitations opined by Dr. Ehlert consistent with the medical imaging, Dr. Schwab's consultative examination findings, and Dr. Schwab's opinion that plaintiff had postural limitations, and limitations lifting, carrying, and walking. Id.

Finally, concerning NP Wilson's opinions, ALJ Van Vleck found her April 2017 and June 2018 opinions "more persuasive" than the August 2021 opinion "because they are more consistent with the record, and supported by physical examinations and medical imaging. She noted that NP Wilson indicated in April 2017 that plaintiff had "moderate limitations in walking, standing, lifting, carrying, pushing, pulling, bending, and stairs or other climbing" and in June 2018 that plaintiff had "moderate restrictions in lifting, carrying, pushing, pulling, bending, and stairs or other climbing". Id. at 26. By contrast, her August 2021 was "essentially blank" except for NP Wilson's opinion that plaintiff "was not stable enough to work due to back and abdomen problems" and could "walk one half to one city block without rest". Id.

To support her conclusion, ALJ Van Vleck cited plaintiff's June 2020 abdominal CT showing "resolution of small bowel obstruction, no bowel distention, and degenerative changes of the lumbar spine and sacroiliac joints", along with reports of physical examinations in August 2020 and May 2021 showing, among other things, "normal extremities", "normal gait", and "good mobility of all extremities". Id. She noted that, as of May 2021, plaintiff's "right hip pain was treated conservatively with injections, and physical therapy". Id. Finally, she noted that NP Wilson's "opinions in 2017 and 2018 are more consistent with the opinion of State agency consultants . . . who opined [plaintiff] was able to perform a range of sedentary work". Id.

- 6 -

# ANALYSIS

## A.    Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).   "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*"(emphasis in original)).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process.  *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole".  Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443,

*2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination").

   It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable"). "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

   Plaintiff argues that ALJ Van Vleck erred in three ways:

1. Failing to explicitly and specifically discuss plaintiff's testimony concerning her inability to sit, stand, and walk for long periods of time;

2. Failing to include in her RFC a sit/stand option based upon the plaintiff's testimony; and

3. Improperly relying upon the plaintiff's activities of daily living to conclude that she was not disabled.

Plaintiff's Memorandum [8-1] at 13-21.

   In response, the Commissioner argues that ALJ Van Vleck's analysis, when read as a whole, properly considered the plaintiff's testimony and subjective complaints by referencing "multiple regulatory factors relevant to assessing Plaintiff's subjective complaints". Commissioner's Brief [10-1] at 13. In addition, the Commissioner argued that the ALJ's

conclusions were supported by substantial evidence, and that she properly considered the plaintiff's daily activities as part of the record.  Id. at 17-19.

**B.      Did ALJ Van Vleck Properly Consider Plaintiff's Testimony?**

Plaintiff specifically argues that ALJ Van Vleck was required to, but "did not provide a sufficient explanation for her conclusion that Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence".  Plaintiff's Memorandum of Law [8-1] at 15-16.  She argues that because "the ALJ's decision included a neutral summary of the various medical opinions in the record followed by only a general analysis of each opinion", "it is impossible to discern whether the ALJ's determination is based on substantial evidence."  Id.  Specifically, she argues that because ALJ Van Vleck did not recite plaintiff's testimony concerning how long she was able to sit, walk, or stand, that she "completely disregard[ed] this testimony".  Id.  Finally, plaintiff argues that three of the treatment notes from her orthopedist support her testimony concerning her functional limitations.  Id. at 16-18 (*citing* orthopedic treatment notes dated December 22, 2020, April 21, 2021, and May 27, 2021).

I find that ALJ Van Vleck was entitled to reject plaintiff's testimony concerning her functional abilities, and that the ALJ supported her determination with substantial evidence as required by the applicable Social Security regulations.  20 C.F.R. § 404.1529 indicates that, in order to evaluate the functional limitations caused by "the intensity and persistence" of a claimant's symptoms, "such as pain", an ALJ must "consider all of the available evidence from [a claimant's] medical sources and nonmedical sources".  20 C.F.R. § 1529(c)(1).  This evidence includes objective medical evidence, and "other evidence", such as a plaintiff's "daily activities"; the "location, duration, frequency, and intensity" of a plaintiff's "pain or other symptoms";

"precipitating and aggravating factors"; the "type, dosage, effectiveness, and side effects of any medication" that a plaintiff takes "to alleviate [her] pain"; treatment other than medication; other measures used to relieve pain; and any "other factors" concerning a plaintiff's functional limitations and restrictions.  Id. at §1529(c)(3)(i-vii).

        I agree with the Commissioner that ALJ Van Vleck considered most, if not all, of these factors in her decision in sufficient detail to satisfy her obligation to "construct an accurate and logical bridge between [her] recitation of the facts and the conclusions [she] reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted); see also Commissioner's Brief [10-1] at 14-18.  Although there is evidence in the record that could support different findings, "there is substantial evidence to support the ALJ's decision.  The Commissioner, not the Court, is responsible for weighing conflicting evidence."  Pagan o/b/o Delgado v. Barnhart, 409 S.Supp.2d 217, 220 (W.D.N.Y. 2006).

        In order to evaluate the plaintiff's testimony concerning her claimed functional limitations, ALJ Van Vleck considered the plaintiff's daily activities, which remained fairly consistent in her reports to the SSA in 2017 and 2021, and to Dr. Schwab in 2020.  See Administrative Record [6, 7] at 25, citing id. at 483 (Exhibit B20E/2) (plaintiff stated in her June 2021 adult function report that she had no problem managing her personal care and reported doing daily activities like household chores, laundry, dishes, taking walks, going to the store, and cleaning up after her dog), 389-96 (Exhibit 3E) (plaintiff reported in her February 2017 adult function report that she had no problem managing her personal care and reported shopping, walking, using public transportation, preparing meals, cleaning, doing laundry, walking the dog), and 1772 (Exhibit 49F/3, Dr. Schwab's report) (plaintiff reported cooking, cleaning, laundry and

shopping daily, and managing her personal care).  ALJ Van Vleck also considered plaintiff's report to Dr. Schwab that she listens to the radio, reads, goes online to socialize with friends, and enjoys going to stores and to doctors' offices.  Id. at 25, *citing* id. at 1772 (Exhibit 49F/3).

        I do not agree with plaintiff that ALJ Van Vleck was "improperly hyper-focused" on plaintiff's reported activities of daily living.  Plaintiff's Memorandum of Law [8-1] at 20-21.  First, the ALJ's analysis of plaintiff's daily activities amounts to a single, 4-sentence paragraph out of an analysis spanning over 5 pages.  Further, she did not use this evidence in isolation or conclude that plaintiff's abilities to do these activities on a daily basis, alone, demonstrated plaintiff's ability to work.  ALJ Van Vleck considered these activities as evidence that plaintiff was not as disabled as she claimed when considered in the context of the medical and opinion evidence available in the record.  Administrative Record [6, 7] at 25.  She did not mis-state or exaggerate any of the evidence of plaintiff's activities, or ignore evidence that plaintiff was not, in fact, able to perform these activities.  Finally, ALJ Van Vleck considered this evidence in context of the entire record, including the medical and opinion evidence, as discussed below.  "[A]n ALJ may reject plaintiff's subjective allegations in light of inconsistent evidence of daily functional ability."  Shania W. v. Commissioner, 2021 WL 3131182, *5 (W.D.N.Y. 2021).  Accordingly, I find that ALJ Van Vleck did not assign improper weight or importance to plaintiff's activities of daily living in her decision.

        Further, I find that the ALJ was not required to specifically recite plaintiff's testimony concerning her alleged limitations for sitting, standing, walking, and lifting.  *See* Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony, as Judge Oakes suggests in his dissenting opinion, infra. It is sufficient that the ALJ noted that he carefully considered the exhibits

presented in evidence in reaching his decision").  Here, the ALJ referred to that testimony when she stated that the plaintiff's statement concerning the "intensity, persistence and <u>limiting effects</u> of these symptoms are not entirely consistent with the medical and other evidence in the record for t he reasons explained in this decision".  Administrative Record [6, 7] at 22 (emphasis added).

Moreover, the ALJ was sufficiently specific during her remaining analysis that it is not possible to say here that "no reasonable fact finder could have reached the ALJ's conclusions based on the evidence in the record."  <u>Cheatham</u>, <u>supra</u>.  The ALJ outlined the evidence of plaintiff's medical treatment, examinations, and imaging concerning hip and low back during the period under consideration.  She discussed Dr. Schwab's examination report from November 2020, along with plaintiff's treatment records from 2020 through 2021, and imaging from June 2020 showing degenerative changes to the lumbar spine and sacroiliac joints. *See* <u>id.</u> at 23.  ALJ Van Vleck accurately summarized the plaintiff's complaints of pain in her low back and hip as they are recorded in the treatment notes, and the findings on examination contained in the reports, such as "good mobility of all extremities", "normal gait", and "ability to ambulate independently with no use of an assistive device".  *See* <u>id.</u> at 22-23.

She noted that plaintiff testified she would be having a hip replacement surgery in September 2021(<u>id.</u> at 22), but that the treatment she had received thus far included "conservative treatment modalities, such as extra strength Tylenol, a muscle relaxer, right hip injections, and physical therapy" (<u>id.</u> at 23).  Upon examination with Dr. Schwab, plaintiff was "in no acute distress", was "able to walk on her heels and toes without difficulty", "squatted up to 70 percent", "needed no help getting on and off the examination table" and "was able to rise without difficulty from a chair".  Although she reported some pain during the examination (such

as for the supine straight leg test), she had full range of motion and strength in her lower extremities , no sensory deficits, and a normal gait.  Id. at 23.  The content of these records, and their findings, are stated accurately, and all this evidence is relevant to an ALJ's assessment of the plaintiff's testimony concerning her functional abilities as stated in 20 C.F.R. § 404.1529.

Plaintiff argues that other records, not specifically cited by the ALJ, "support her complaints regarding her hip pain" and the sitting limitations to which she testified.  Plaintiff's Memorandum of Law [8-1] at 16-18.  However, although I find that ALJ Van Vleck did not err by not specifically discussing the three treatment notes identified by plaintiff, even if I were to assume that this was error, such an error was harmless, as the records do not support functional limitations in sitting that plaintiff testified to, or recommend that plaintiff be offered a sit/stand option.  Where remand, despite an error, could lead only to the same conclusion, remand is not required.  See Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) ("[r]emand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion" (internal quotation and citation omitted)).

Plaintiff identifies three treatment notes from the Orthopedic Clinic at Buffalo General Hospital.  Plaintiff treated with Physician's Assistant Julie R. Skrabucha on December 22, 2020 and April 21, 2021.  She reported on both occasions that she "cannot stand or sit for long periods of time as her symptoms are starting to affect her activities of daily living".  Id. at 1870, 1876.  Upon examination, PA Skrabucha observed plaintiff walking with an antalgic gait favoring the right hip.  The range of motion of her right hip was decreased somewhat to 100 degrees of flexion[3], with decreased (but not measured) rotation and abduction due to pain.  Id. at 1872, 1878.  The range of motion of the left hip was full and painless.

---

[3]        "For hips the normal ranges are: flexion with bent knee 120 degrees, extension 30 degrees, abduction 40 degrees, internal rotation 40 degrees, and external rotation 50 degrees. Dan J. Tennenhouse,

In December 2020, after being presented with all of her treatment options, plaintiff "elected to continue with anti-inflammatories for pain" and was prescribed a topical gel. Id. at 1880.  She was also referred to physical therapy and given a prescription for a steroid injection to the right hip.  Id.  PA Skrabucha did not incorporate into her report any functional restrictions or limitations concerning sitting, standing, or walking.  *See* id.

In April 2021, plaintiff's range of motion was the same and she continued to walk with an antalgic gait.  Id. at 1872.  She told PA Skrabucha that the steroid injection provided relief "for only a week", after which her symptoms returned.  Id. at 1870.  During this visit, plaintiff stated that she "feels she has exhausted all of her conservative treatments" and stated that her conditions were "affecting her quality of life".   Again, PA Skrabucha did not incorporate into her report any functional restrictions or limitations concerning sitting, standing, or walking.  *See* id.

Plaintiff met with Donald J. Nenno, II, M.D. on May 27, 2021 to discuss hip replacement surgery.  Id. at 1881-83.  Dr. Nenno observed plaintiff to be "in moderate distress" with her gait "markedly altered on the right".  Id. at 1883.  He stated, without providing measurements, that her "[r]ange of motion of the right hip is significantly limited with pain".  Id.  In his opinion, plaintiff had "failed nonoperative treatment".  Id.  Plaintiff wished to proceed with a hip replacement.  Id.  Dr. Nenno prescribed her a cane to "help her ambulate" until the surgery.  Id.  Notwithstanding his recommendation that plaintiff use a cane to help her walk, he did not incorporate into his report any functional restrictions or limitations concerning sitting, standing, or walking.  *See* id.

---

Diagrams of the Joints and Their Motions, 1 ATTORNEY'S MEDICAL DESKBOOK § 12:3 (4th ed. 2017)."  Louis v Berryhill, 2018 WL 8545833, *5, n.4 (S.D.N.Y. 2018).

Therefore, while the three treatment notes cited by plaintiff could indicate a worsening of plaintiff's hip condition by May 2021, they do not support her claim that she required any functional limitations concerning sitting, standing, walking, or lifting.  *See* Plaintiff's Memorandum of Law [8-1] at 16.  Plaintiff argues further that Dr. Schwab's and NP Wilson's opinions support her argument.  *See* id. at 18.  However, neither incorporated the restrictions that plaintiff proposed.

Dr. Schwab opined that plaintiff had restrictions for bending, lifting and carrying heavy objects, prolonged walking, climbing stairs and ladders, and prolonged exertion. Administrative Record [6, 7] at 1775.  Although ALJ Van Vleck found that plaintiff was less than markedly limited due to the examination findings in Dr. Schwab's report, she nonetheless limited plaintiff to sedentary work, which does not require prolonged walking, or lifting heavy objects.  *See* Perez v Chater, 77 F.3d 41, 46 (2d Cir 1996) ("[s]edentary work also generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day"); *see also* 20 C.F.R. §§ 416.967(a) ("[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties").

NP Wilson opined in her August 2021 report that plaintiff "was not stable enough to work due to back and abdomen problems; and she can walk one half to one city block without rest", but her report was otherwise blank. Id. at 26.  ALJ Van Vleck found that NP Wilson's April 2017 and June 2018 opinions "more persuasive" than her August 2021 opinion "because they are more consistent with the record" and "supported by a physical examination[ ] and

- 15 -

medical imaging" Id.  In addition, they "are more consistent with the opinion of State agency

consultants . . . who opined she was able to perform a range of sedentary work".  Id.

Notably, the ALJ "is entitled to rely not only on what the record says, but also on

what it does not say".  Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995).  Here, the record did not

contain any evidence of functional limitations in plaintiff's ability to sit that would preclude

sedentary work, nor does it contain evidence that plaintiff requires a sit/stand option.

Accordingly, ALJ Van Vleck's findings concerning plaintiff's RFC were

supported by substantial evidence.  She supported her RFC with specific citations to the record.

She neither mischaracterized nor cherry-picked the record to support her conclusions.  She did

not ignore evidence of more significant limitations.  Therefore, I find that her conclusions

concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind

might accept" ALJ Van Vleck's reasoning  "as adequate to support her conclusion".

Consolidated Edison Co., 305 U.S. at 229.  I find that her analysis, read as a whole, satisfies her

obligation "to construct an accurate and logical bridge between his recitation of the facts and the

conclusions he reached".  Lopez obo Y.T., 2020 WL 4504987 at *2.  Although there is evidence

in the record that could support different findings, "there is substantial evidence to support the

ALJ's decision.  The Commissioner, not the Court, is responsible for weighing conflicting

evidence." Pagan o/b/o Delgado, 409 S.Supp.2d at 220 (W.D.N.Y. 2006).

**CONCLUSION**

For the reasons stated above, Commissioner's motion for judgment on the

pleadings [9] is granted and the plaintiff's motion for judgment on the pleadings [8] is denied.

**SO ORDERED**.

Dated: September 13, 2024

                                    JEREMIAH J. MCCARTHY
                                    United States Magistrate Judge